IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BAYOU PLACE LIMITED PARTNERSHIP | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-18-2855 |
| ALLEPPO'S GRILL, INC., *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Bayou Place Limited Partnership ("Plaintiff" or "Landlord") has brought this action against Defendants Alleppo's Grill, Inc. ("Tenant"), Little Napoli, Inc., and Mike Hasan Zayed (collectively, "Defendants"),[1] alleging continuing violations of a commercial lease agreement governing a property in Houston, Texas. (ECF No. 1, ¶ 1.) Plaintiff alleges Defendants are jointly and severally liable in the amount of $542,595.78 for unpaid rent and late charges that have accumulated since July 2017. (*Id.*) In response, Defendants raise a series of affirmative defenses and a counterclaim, each seeking to excuse their nonperformance, which is undisputed. (ECF No. 8.) Pending now is Plaintiff's Motion for Summary Judgment (ECF No. 15), Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence (ECF No. 22), and Defendants' Supplemental Motion to Strike. (ECF No. 26.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local

---

[1] Plaintiff has voluntarily dismissed its claims against former Defendant Sylvia Aguilar. (ECF No. 19.) Aguilar did not answer the Complaint or assert a counterclaim.

1

Rule 105.6 (D. Md. 2014).  For the reasons that follow, Defendants' Motion to Strike (ECF No. 22) and Supplemental Motion to Strike (ECF No. 24) are DENIED, and Plaintiff's Motion for Summary Judgment (ECF No. 15) is GRANTED.

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).  Plaintiff Bayou Place Limited Partnership is a limited partnership organized and existing under the laws of Maryland, headquartered at 601 East Pratt Street, Suite 600, Baltimore Maryland 21202.  (ECF No. 1 ¶ 2.)  Defendant Alleppo's Grill, Inc., is a corporation organized and existing under the laws of the State of Texas.  (*Id.* ¶ 3.)

On April 26, 2012, Tenant and Landlord executed a commercial lease (the "Lease") to open a Little Napoli restaurant in a mixed-use development project in Houston, Texas. (ECF No. 15, Ex. 1 §§ 201(a)–(b).)  The Lease, governed and construed under Texas law, commenced on August 18, 2012 for a term of ten years.  (*Id.* §§ 2702, 201(b).)  As relevant, rent started at $110,075.00 annually and $9,171.42 per month for the first five years, increasing to $130,078.00 annually and $10,839.83 per month for the remainder of the term. (*Id.* § 201(d).)  Missed payments would incur late charges at a rate of 5% per month, (*Id.* § 2605), and all payments owed were subject to an annual interest rate calculated as the lesser of the maximum permitted by Texas, or eighteen percent.  (*Id.* § 311.)  At "its sole cost and expense," Tenant was also required to maintain business interruption insurance sufficient to

2

cover twelve months' rent. (*Id.* § 904.) Performance of these terms was subject to a Guaranty signed by Defendants Mike Hasan Zayed, Sylvia Aguilar, and Little Napoli, Inc. (*Id.* at 37–41.)

Tenant began to miss rent payments due under the lease beginning on July 1, 2017. (*Id.* Ex. 2 ¶ 7; Ex. 4.) That August, Hurricane Harvey made landfall in Houston. As a result, the Bayou Place Development and the Little Napoli Restaurant were closed on August 17, 2017. (*Id.* Ex. 2 ¶ 7.) Harvey caused substantial harm to the property. (Aff. of Mike Hasan Zayed ¶ 5, ECF No. 23-1.) The restaurant's basement—containing assorted furniture, equipment, electrical infrastructure, and liquor supplies—was completely flooded, causing damages in the excess of $146,000.00. (ECF No. 23-1 ¶ 5.) Additionally, the nearby Theater District was substantially damaged by the storm. (ECF No. 23-1 ¶ 12.) The Wortham Center was closed until September 26, 2018, and the surrounding area remains under construction. (*Id.*) Tenant claims these events resulted in a substantial loss of business. (*Id.*)

Tenant tried to open for business on September 15, 2018 but was forced to close the next day due to a transformer accident in the basement. (ECF No. 23-1 ¶ 8.) The restaurant reopened in late September after further repairs.[2] Defendant filed a claim with Traveler's Insurance to cover its losses based on a power outage caused by Harvey, but this claim apparently proved unsuccessful. (ECF No. 23-1 ¶ 6.)[3] As a result, Tenant contributed approximately $65,000.00 in out-of-pocket expenses to these repairs. (ECF No. 23-3.)

---

[2] Plaintiff states that the restaurant remained closed until September 30, 2017, while Defendant claims the restaurant opened for business on September 26. (*Compare* ECF No. 15-3 ¶ 7 *with* ECF No. 23-1 ¶ 12.) This uncertainty is of no significance to the outcome of this case.

[3] Tenant insists in its motion that it has have filed multiple unsuccessful claims, but only provides

According to Landlord's records, Tenant has not made any payments in the three years after the restaurant reopened. (ECF No. 16.) As a result of these missed payments, and consequential late fees, Plaintiff claims Defendants have accumulated a total liability of $542,595.78 as of the filing of Plaintiff's pending Motion for Summary Judgment. (*Id.*) In an affidavit (the "Zayed Affidavit"), Defendant Zayed claims to have paid over $140,000.00 since August 2017 by way of wire transfer, cashier's checks, and business checks. (ECF No. 23-1 ¶ 13.) Tenant does not produce any additional evidence of these payments.

Landlord provided Tenant with several notices of Default throughout late 2017 and issued a Final Notice of Default on February 19, 2018. (ECF No. 15-4.) Plaintiff filed its Complaint on September 14, 2018, and Defendants filed an Answer on November 20. (ECF No. 1; ECF No. 8.) In their Answer, Defendants admitted that the Tenant received notice and failed to pay the entirety of its rent, (ECF No. 8 ¶ 20), while raising several affirmative defenses, and asserting a counterclaim to request a declaratory judgment that "they be excused from certain obligations to pay rent due to Acts of God." (ECF No. 8 ¶¶ 26–27.) The pending Motion for Summary Judgment was docketed on April 4, 2019. (ECF No. 15.) On May 2 and May 10, Defendants filed two Motions to Strike Plaintiff's Summary Judgment Evidence. (ECF No. 22; No. 24.) All three Motions remain pending. For the following reasons, Defendant's Motions to Strike are DENIED, and Plaintiff's Motion for Summary Judgment is GRANTED.

---

evidence of this single claim. (*See id.*). Notably, this evidence does not include an affirmative denial of coverage.

# STANDARDS OF REVIEW

## I. Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under Rule 12(f) "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Hammer v. Peninsula Poultry Equip. Co.*, No. RDB-12-1139, 2013 WL 97398, at \*4 (D. Md. Jan. 8, 2013) (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)). These motions "should be denied unless the allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–55 (D. Md. 2003) (internal citation omitted). Accordingly, "in reviewing motions to strike . . . federal courts have traditionally 'view[ed] the pleading under attack in a light most favorable to the pleader.'" *Hammer*, 2013 WL 97398, at \*4 (quoting *Palmer v. Oakland Farms, Inc.*, No. 5:10-cv00029, 2010 WL 2605179, at \*2 (W.D. Va. June 24, 2010)).

## II. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. at 378.

Nevertheless, this Court must abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). "After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial." *U.S. v. Korangy Radiology Assoc., P.A.*, No. RDB-09-cv-0623, 2009 WL 5108833, at *2 (D. Md. Dec. 17, 2009) (citing *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246–47 (4th Cir. 2005)). Moreover, "where the party opposing a motion for summary judgment will bear the burden of proof on an issue at trial, he must go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted."). "No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case

as to which he or she would bear the burden of proof at trial." *Henson v. Graham*, No. RDB-14-2058, 2015 WL 3456778, at *2 (D. Md. May 28, 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

**I.     Defendants' Motion to Strike and Supplemental Motion (ECF No. 22; 24)**

Defendants move to strike two of the four exhibits accompanying Plaintiff's Motion for Summary Judgment: (1) The Final Notice of Default sent to Tenant on February 19, 2018; and (2) an affidavit by Landlord's employee Amanda Amos (the "Amos Affidavit"), (ECF No. 22 ¶ 1; ECF No. 15-3, 15-4.)[4] In moving to strike this evidence, Defendants do not cite Rule 12(f), but instead argue that Plaintiff's evidence is inadmissible under the Federal Rules of Evidence and cannot be introduced through a summary judgment motion. (ECF No. 22 ¶ 3.)[5]

This argument misstates the relevant standard. Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P.

---

[4] Defendant also moves to strike the Account Statements that Plaintiff offers to demonstrate its missed payments. (ECF No. 22 ¶ 1; ECF No. 16.) Defendant's only argument on this exhibit is that it was not attached to the original motion. (ECF No. 22.) The Defendant's Supplemental Motion to Strike was submitted purely to retract this allegation and asserts no additional arguments against Exhibit 4. (ECF No. 24). Had Defendant objected on hearsay grounds, it would nonetheless survive under as a business record under Fed. R. Evid. 803(6).

[5] As an initial matter, Rule 12(f) refers to "pleadings," and may not apply to materials submitted at the summary judgment stage. *See CX Reinsurance Co., Ltd., v. Johnson*, 325 F.R.D. 132, 135 (D. Md. 2018). Nevertheless, Defendant did not explicitly cite to Rule 12(f), and Rule 56(e) permits a reviewing court to "issue any other appropriate order" to address a party's failure to properly support its assertions. Fed. R. Civ. P. Rule 56(e). To the extent that Defendant is requesting this Court to reject these exhibits under Rule 56(e), this Court considers them fully, and rejects them in turn.

56(c)(2) (emphasis added). Accordingly, "'the relevant question is not the admissibility of the evidence's current form but whether it can be presented in an admissible form at trial.'" *Younger v. Green*, No. RDB-16-3269, 2019 WL 6918491, at *4 (D. Md. Dec. 19, 2019) (internal citation omitted); *accord Graves v. Lioi*, 930 F.3d 307, 325 n.15 (4th Cir. 2019) ("'[M]aterials capable of being reduced to admissible evidence at trial' can be the basis for summary judgment even though 'hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment.'" (internal citations omitted)). Regardless, both of these exhibits are admissible.

First, Defendants move to strike the Final Notice of Default as inadmissible hearsay. This contention is unsuccessful. Hearsay is an out-of-court statement "offered to prove the truth of the matter asserted" by the declarant. Fed. R. Evid. 801(c). Hearsay is ordinarily inadmissible at trial, and unavailable for consideration on a motion for summary judgment. Fed. R. Evid. 802; *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991). Out-of-court statements offered for other purposes—such as "to prove merely that the statement had been made"—are not hearsay. *ATS Intern. Servs., Inc. v. Kousa Intern., LLC*, No. RDB-12-2525, 2014 WL 1745004, at *6 (D. Md. May 1, 2014); *see Dutton v. Evans*, 400 U.S. 74, 88 (1970)). Plaintiff provides the Final Notice of Default to demonstrate that Tenant was put on notice—not to prove that Tenant was in default. (*See* ECF No. 15, Mem. in Supp. ¶ 8.) Accordingly, the Notice of Default does not implicate the rule against hearsay.

Second, Defendants move to strike various portions of the Amos Affidavit on the grounds that the affiant has failed to demonstrate her qualifications to testify regarding the

8

delinquency of Tenant's payments or the effects of the Lease agreement.  (ECF No. 22 ¶ 8.)  Under Rule 56(e), affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).  *See, e.g., Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).  Although Exhibit 2 is light on Ms. Amos' qualifications, any foundation defects were cured by the supplemental affidavit submitted with Plaintiff's Reply in Support of its Motion for Summary Judgment.  (ECF No. 27, Ex. 5).  This affidavit provides that Ms. Amos "oversee[s] leasing operations for Bayou Place" by tracking payments, ensuring tenants' compliance with lease agreements, and coordinating with attorneys when tenants are in breach." (*Id.* at 3).  These allegations provide adequate foundation for her testimony and her authentication of the documents at issue.

Defendants also argue that the Affidavit contains legal conclusions which must be supported by expert testimony, and "do not adequately substitute for specific facts" in a motion for summary judgment.  *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002).  This, too, is unavailing: The Amos Affidavit predominately authenticates the other evidence provided by the Plaintiff, including the Lease, the Notice of Default, and the Account Statements.  The statements in this document are not legal conclusions, but reiterations of key facts and components from the other challenged exhibits, such as the clear terms of the Lease and Guaranty. (*Compare, e.g.,* ECF No. 15, Ex. 2 ¶ 5 (noting the personal Defendants, through their Guaranty, "agreed to be jointly and severally liable"), *with* ECF No. 15, Ex. 1, at 37 ("The liability of Guarantor is coextensive of the Tenant and also joint and several").

9

To the extent that Paragraph 6 discusses Tenant's breach of the Lease, this Court will read that paragraph only for factual support of missed payments—a proposition admitted by the Defendants in their Answer and adequately established through the Account Statements. (*Id.* Ex. 2 ¶ 6; ECF No. 16.) Accordingly, Defendants' Motion to Strike Plaintiff's Summary Judgment Evidence and Supplemental Motion to Strike are DENIED.

## II. Plaintiff's Motion for Summary Judgment (ECF No. 15)

Landlord alleges that Tenant breached its obligations under the Lease by failing to make rent payments since July 1, 2017. Texas law governs the breach of contract claim pursuant to the Lease's choice of law provision.[6] (ECF No. 15-2 § 2702.) "'A breach of contract occurs when a party fails or refuses to do something he has promised to do.'" *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. 2009) (quoting *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App. 2006)). "The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *Id.* (citing *Valero Mkting & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001)). To prevail on this motion, Plaintiff must demonstrate that no genuine dispute of material fact exists as to any of these elements, and that it would be entitled to a directed verdict at trial. *Anderson*, 477 U.S. at 250.

---

[6] A federal court sitting in diversity must apply the choice of law rules of the forum state. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013), *cert. denied*, 571 U.S. 1130, 134 S. Ct. 986 (2014). Accordingly, this Court employs Maryland choice of law rules. Maryland law ordinarily honors the choice of law provisions agreed to by contracting parties. *See, e.g.*, *Hanover Investments, Inc. v. Volkman*, 455 Md. 1, 24, 165 A.3d 497 (2017).

Plaintiff produces sufficient evidence to establish its breach of contract claim. Defendants do not contest the validity of the Lease Agreement, which demonstrates the existence of the contract at issue and the relevant terms. (ECF No. 15-2.) These terms include Tenant's obligation to pay rent—at a rate of approximately $10,839.83 per month—and a method for calculating late charges—at a rate of 5% per month, plus annual interest. (*Id.* §§ 201(d), 2605, 311.) Plaintiff's performance is similarly uncontroversial, as Defendants have operated their restaurant on the leased premises since 2012. Tenant's breach and resulting damages are established by the Account Statement, which enumerates the $542,595.77 in missed payments, late fees, and associated interest that have accumulated since July 1, 2017. (ECF No. 16, Ex. 4.)[7] This document was authenticated by the Amos Affidavit. (ECF No. 15, Ex. 2 ¶ 10.)

Defendants seek to excuse Tenant's breach by raising four affirmative defenses: First, Defendants seek to offset the damages by claiming to have paid $140,000 to Plaintiff. Second, Defendants invoke *force majeure*[8]—or "Act of God"—to excuse the $40,000 in payments missed during the weekslong disruption in business caused by Hurricane Harvey. Third, Defendants insist the late fees are usurious and unconscionable as a matter of law. Finally, Defendants claim that the damage Harvey caused to the surrounding community diminished the value of its business and frustrated the central purpose of this contract. As

---

[7] Defendants contend that Plaintiff fails to explain how these fees were calculated. (ECF No. 23 at 6.) Although Plaintiff has not specified exactly how the fees were calculated, the Account Statement includes a month-by-month accounting and summation of each of these fees. (ECF No. 16.) Moreover, Defendants do not directly contend that these fees are invalid.

[8] The French law term *force majeure* translates literally as "a superior force." *Force Majeure*, BLACK'S LAW DICTIONARY (11th ed. 2019).

11

Defendant would bear the burden of proof on these defenses at trial, Defendant "must go beyond the pleadings and affirmatively establish a genuine issue of material fact" as to each element of these claims. *Celotex Corp.*, 477 U.S. at 324. This evidence must be sufficient for a rational jury to decide the case in its favor. *Scott*, 550 U.S. at 380. For the following reasons, all four defenses are without merit.[9]

### A. Offset.

First, Defendants invoke a defense of "estoppel/excuse/credit/offset" by claiming to have paid over $140,000 to Landlord since August 2017 in the form of wire transfers, cashier's checks, and business checks. (ECF No. 23-1 at ¶ 13.) Texas recognizes a claim of payment as an affirmative defense to the collection of a debt. *Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 5 (Tex. App. 2007); *see also Smith v. Davis*, 462 S.W.3d 604, 614 (Tex. App. 2015) (labelling defense as "offset, setoff, or reimbursement against damages"). In support of this argument, Tenant offers only an affidavit by Defendant Zayed, and fails to provide any checks, rental receipts, or other material evidence that might demonstrate these payments.

No rational jury could find for Defendant based solely on its unsupported claims of compliance with the contract terms. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

---

[9] In its Answer, Defendant raises a counterclaim, requesting "a declaratory judgment of and from the Court that they be excused from certain obligations to pay rent due to Acts of God, which rendered their ability to perform impossible . . . or so diminished the basis, value, and consideration for which the Tenant entered into the Lease, so as to excuse their performance." (ECF No. 8 ¶ 27.) This counterclaim is entirely coextensive with Defendant's defenses and requires no additional analysis.

12

party, there is no genuine issue for trial.'" (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))). A self-serving affidavit, without more, is insufficient to withstand summary judgment. *Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000). Zayed's conclusory assertion is insufficient to create a genuine issue of material fact and survive a summary judgment motion.[10] *See, e.g., Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory. . . .").

**B. Unconscionability.**

Defendants next argue that the late fees associated with the Lease amount to usury and are therefore unconscionable.[11] "The essential elements of a usurious transaction are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) an exaction of greater compensation than allowed by law for the use of the money by the borrower." *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). "A greater rate of interest than 10 percent a year is usurious unless otherwise provided by law." Tex. Fin. Code Ann. §§ 302.001(b), 305.001 (West 2001); *see also* Tex. Const. art. XVI § 11. In determining the interest rate of a loan, "all interest at any time contracted for shall be aggregated and

---

[10] In their Answer, Defendants also predicated their offset claim on "the fact that the Tenant was precluded from using certain parts of the Leased Premises due to no fault of its own, as well as the loss of inventory and damages caused by Hurricane Harvey." (ECF No. 8 ¶ 26.) Although Defendants provide evidence of the damages to its inventory caused by Hurricane Harvey, this evidence is irrelevant to a defense of offset, as it does not suggest that Defendants have actually paid its debt to Plaintiff.

[11] Tenant also argues that "the Defendants had no negotiation power" because these fees were "required by the Plaintiff in order to secure the Leased Premises." (ECF No. 23 at 5.) This expansive proposition is not supported by any evidence or authority. It is also unpersuasive as a matter of policy, as the parties to this Lease are equally sophisticated. The Defendant's displeasure with the late fees it agreed to does not obviate the validity of the contract. *Daugherty v. Highland Capital Mgmt., L.P.*, 2016 WL 4446158, at *13 (Tex. App. Aug. 22, 2016) ("Parties have a right to enter into good and bad contracts, the law enforces both." (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010))).

13

amortized using the actuarial method." Tex. Fin. Code Ann. § 302.001(b). The Lease authorizes late fees at a rate of 5% per month and imposes an interest rate of either 18% per year, or the maximum allowable by Texas law. These rates, in the aggregate, likely exceed the 10% maximum provided by the usury statute. *E.g. Texas Land & Mortg. Co. v. Mullican*, 132 F.2d 241, 242 (5th Cir. 1942) (finding loan usurious where levies and interest exceeded 10% allowable by law); *Ingram v. Temple Trust Co.*, 108 S.W.2d 306, 308–9 (Tex. Civ. App. 1937) (noting interest of 7%, accrued semiannually, was usurious when taken alongside acceleration provision).

Nevertheless, Texas usury laws do not apply to this transaction. Texas courts have routinely held that the usury statute "applies to credit transactions and to loans and lenders of money and does not in any way refer or apply to lease agreements." *Maloney v. Andrews*, 483 S.W.2d 703, 704 (Tex. Civ. App. 1972); *e.g. Jones v. R.O. Pomroy Equip. Rental, Inc.*, 438 S.W.3d 125, 133 (Tex. App. 2014); *Potomac Leasing Co. v. Hous. Auth. of El Paso*, 743 S.W.2d 712, 713 (Tex. App. 1987); *Apparel Mfg. Inc. v. Vantage Properties, Inc.*, 597 S.W.2d 447, 449 (Tex. App. 1980).[12] The leading case for this rule is *Maloney v. Andrews*, in which a tenant challenged the late fees owed under his lease agreement as usurious. 483 S.W.2d at 704. The Court rejected this claim, noting that the statute specifically contemplates "contracts for a loan of money and for a charge made for the use of that money." *Id.* In the context of a lease, as opposed to a loan or promissory note, these statutes are inapplicable, as "there is no

---

[12] There is a narrow exception to this rule for purchase agreements in the guise of leases. *Jones*, 438 S.W.3d at 133. This exception is inapplicable, as either party has characterized this lease as a lease-purchase agreement.

14

lending transaction" and "no interest charged or received." *Id.* at 705; *see also Potomac Leasing Co.*, 743 S.W.2d at 713 (noting that "no credit transaction is involved" in a lease agreement, as monthly payments "extend the lease and the right to possession of the item under lease").

The rule developed in *Maloney* is directly applicable in this case. The Lease at issue was not a loan, a purchase agreement, or a promissory note—any of which would have involved the detention of money and satisfied the first essential element of a usury claim. *C.f. Dixon v. Brooks*, 604 S.W.2d 330, 333 (Tex. App. 1980) (applying usury charges to delinquency charges mortgage); *Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 715 (Tex. App. 1998) (applying usury charge to personal loan). Rather, this contract was a month-by-month agreement extending possession of the leased premises in accordance with rent payments. Lacking the essential element of a lending transaction, the terms of this Lease cannot constitute usury, notwithstanding the aggregate total of the interest and late fees Tenant was required to pay. Accordingly, this defense is inapplicable as a matter of law.

## C. Force Majeure.[13]

Defendants insist that Hurricane Harvey was an Act of God that caused substantial damage, interfered with their access to the property, and should excuse their performance under the Lease. (ECF No. 23 ¶¶ 19, 21.) "An occurrence is caused by an act of God if it is caused directly and exclusively by the violence of nature, without human intervention or cause, and could not have been prevented with reasonable foresight or care." *McClure v. Greater San Antonio Transportation Co.*, No. SA-08-CA-112-FB, 2008 WL 11334957, at *10

---

[13] The French law term *force majeure* translates literally as "a superior force." *Force Majeure*, BLACK'S LAW DICTIONARY (11th ed. 2019).

(W.D. Tex. Oct. 30, 2008). "The event 'need only be so unusual that it could not have been reasonably expected or provided against.'" *Id.* (internal citation omitted).

Under Texas law, "an act of God does not relieve the parties of their [contractual] obligations unless the parties expressly provide otherwise." *GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 259 (Tex. App. 1991). "Regardless of its historical underpinnings, the scope and applicability of a force majeure clause depend on the terms provided in a contract." *Zurich Am. Ins. Co. v. Hunt Petroleum, Inc.*, 157 S.W.3d 462, 466 (Tex. App. 2004). "In other words, when the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure." *Sun Operating Ltd. Partnership v. Holt*, 984 S.W.2d 277, 283 (Tex. App. 1998). If the contract does not contain a *force majeure* clause, "Act of God is not a legal excuse for failure to perform." *Metrocon Const. Co. v. Gregory Const. Co.*, 663 S.W.2d 460, 462 (Tex. App. 1983); *see, e.g.*, *Miller v. Durham*, No. 07-14-00087-CV, 2014 WL 4101762, at *4 (Tex. App. 2014) (as "[t]he contract at issue did not contain an act of God or *force majeure* clause," a long-term drought "would not be an excuse for performance of the contract").

Unsurprisingly—and understandably—Texas courts have already recognized that Hurricane Harvey was an Act of God. *E.g. In re Downstream Addicks*, No. 17-9002, 2020 WL 808686, at *9 (Fed. Cl. Feb. 18, 2020) (finding Harvey was a 2000-year storm that "could not have been reasonably expected or provided against."); *Landgraf v. Nat. Res. Conservation Serv.*, No. 6:18-CV-0061, 2019 WL 1540643, at *2 (S.D. Tex. Apr. 9, 2019) (finding flooding caused by storm surge from Harvey attributable solely to an Act of God). Nevertheless, as

16

Defendants directly acknowledge, "[i]t is undisputed that the Lease at issue does not contain a force majeure clause." (ECF No. 23 ¶ 19.)[14] Moreover, Tenant began to miss its payments almost two months before Harvey and has continually failed to pay for three years after. (ECF No. 16, Ex. 4.) Accordingly, Hurricane Harvey is not a legal excuse for Tenant's failure to perform, and Defendants' Act of God defense is inapplicable as a matter of law.

### D. Frustration of Purpose.

Finally, and relatedly, Defendants argue that Hurricane Harvey "changed or frustrated the purposes of the Lease" by "completely wip[ing] out" the surrounding market and "severely affect[ing] the restaurant's business." (ECF No. 23 ¶ 25.) As Defendant cites no authority to support this argument, this Court will consider it under the frustration of purpose doctrine. "'Frustration of purpose' is an excuse to performance that is sometimes described as 'impossibility of performance' or 'commercial impracticability.'" *Philips v. McNease*, 467 S.W.3d 688, 695 (Tex. App. 2015). Frustration of purpose may be applied when "an event occurs and the contract was made on the basic assumption that the event would not occur." *Id.* (citing *Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 52 (Tex. App. 2011)). This defense is commonly available upon: "(1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing necessary for performance, [or] (3) a change in the law that prevents a person from performing." *Id.* at 696.

---

[14] Although the Lease requires the Tenants to maintain business interruption insurance, this clause does not provide any measures for excusing performance in the event of an Act of God. (ECF No. 15, Ex. 2.)

The core of Defendants' argument is that "the destruction or deterioration" of the Theater District impeded the success of the business and rendered performance impossible. In support of this argument, Defendants provide an accounting of the damage to Tenant's inventory, an invoice for repairs to Tenant's basement, and evidence of claims made to Tenant's insurance carrier. (ECF No. 23-3, 23-4, 34-6.) Additionally, Defendant Zayed insists that the location of the Theater District was one of his "biggest considerations" in entering the Lease. (ECF No. 23-1 ¶ 3.) This evidence is insufficient to establish essential elements of the frustration of purpose defense. *See Celotex Corp.*, 477 U.S. at 324 ("[W]here the party opposing a motion for summary judgment will bear the burden of proof on an issue at trial, he must go beyond the pleadings and affirmatively establish a genuine issue of material fact.").

First, nothing on record suggests the parties bargained "on the basic assumption" that an interruption would not occur, or that Tenant's business would remain profitable. Rather, as both parties note, Defendants were contractually obligated to obtain business interruption insurance sufficient to provide for twelve months' rent. (ECF No. 15, Mem. in Supp. ¶ 7; ECF No. 23 ¶ 21.) Defendants insist that "[t]he dispositive issue is not that the business was interrupted, but rather that the market in which the Leased Premises are located was completely wiped out as a result of Hurricane Harvey." (ECF No. 23 ¶ 26.) Assuming, arguendo, that this is a meaningful distinction, it is unsupported by the record. Defendants produce no admissible evidence suggesting the restaurant received no significant business following the hurricane. Likewise, although Defendants argues that Tenant's

18

insurance claims were rejected, this is immaterial, as the contract provides that Tenant would maintain this insurance "at its sole cost and expense." (ECF No. 15, Ex. 1 § 904.)

Second, although Tenant produces evidence in support of its expenses, this evidence is not significantly probative of impossibility of performance. Defendants fail to raise any facts that suggest it was entirely incapable of paying rent between the restaurant's reopening and the filing of this lawsuit, or throughout the two ensuing years of subsequent litigation. To the contrary, Defendants provide no evidence as to Tenant's finances. Although Tenant illustrates the damages sustained to the basement and the out-of-pocket costs of repairs, (ECF No. 23, Ex. A-2, Ex. A-3), it offers no evidence suggesting it lacked the funds to make payments on time. Likewise, although Defendant Zayed attests to the importance of the Theater District, and the loss in business caused by the Wortham Center, (*Id.* Ex. A), he nowhere insists that these events made it impossible for Tenant to make its payments, or even to turn a profit. Accordingly, Defendants fails to raise a genuine dispute of material fact in support of their frustration of purpose defense. Plaintiff's Motion for Summary Judgment is hereby GRANTED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Strike and Supplemental Motion to Strike (ECF No. 22; ECF No. 24) are DENIED, and Plaintiff's Motion for Summary Judgment (ECF No. 15) is GRANTED.

A separate Order follows.

Dated: March 13, 2020

\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge